# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 21-2005V

| | |
|---|---|
| CORISSA PRESCOTT, *also known as* CORISSA ALVARADO, <br><br>              Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>              Respondent. | Chief Special Master Corcoran <br><br> Filed: February 29, 2024 |

*Robin J. Marzella, R.J. Marzella & Associates, P.C., Harrisburg, PA, for Petitioner.*

*Dorian Hurley, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT[1]

On October 12, 2021, Corissa Prescott filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on October 16, 2018. Petition at 1. Petitioner acknowledges that she has "been unsuccessful" in obtaining her vaccination record. Am. Petition at 3.

A dispute has thus arisen between the parties regarding one of the claim's primary elements: proof of vaccination. For the reasons discussed below, I find the flu vaccine at

---

[1] Because this Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

issue was most likely administered intramuscularly in Petitioner's left deltoid on October 16, 2018, as alleged.

## I.   Relevant Procedural History

The procedural history of this case is made complicated by numerous filing errors in Petitioner's original records, which resulted in such records being stricken from the record and then re-filed on several occasions. *See,* e.g., ECF Nos. 1, 7, 16, 22, 33, 35, 49, 53-54, 56-57. For the sake of clarity and ease of understanding, I will reference the record only as it currently exists.

Approximately three months after the filing of her original Petition, on January 13, 2022, Petitioner filed an Amended Petition, affidavit, and a statement of completion. ECF Nos. 1, 7-8, 10. This case was subsequently assigned to the Special Processing Unit ("SPU"). ECF No. 18.

An initial status conference was held on October 18, 2022, after which Petitioner filed an affidavit from counsel and her medical records. ECF Nos. 22, 24. Petitioner was subsequently issued subpoenas for her vaccination record. ECF Nos. 23, 25-27. On February 9-10, 2023, Petitioner filed an Amended Petition and an email reflecting a "no records response" from the facility from which Petitioner allegedly received the subject vaccination – Healthcare Services Group. ECF Nos. 32, 38. Petitioner filed her employment records and a statement of completion on May 3, 2023. ECF Nos. 41, 43. Respondent was subsequently ordered to conduct an informal assessment of Petitioner's claim. *See* ECF No. 30; Non-PDF Order, docketed May 3, 2023.

In July 2023, Respondent filed a status report stating that his counsel has conducted a preliminary review of the case. ECF No. 45. Respondent identified certain medical records or other information that was missing regarding Petitioner's vaccine administration record and requested that Petitioner obtain and file such documentation. *See id.* ¶ 1. Respondent also requested complete and certified copies of several of Petitioner's medical record exhibits that appeared incomplete, along with other outstanding and/or updated records, and records related to Petitioner's workers' compensation claim. *Id.* ¶¶ 2-7 (citing Exs. 3-4, 7, 8 at 49). Counsel also noted proof of vaccination, site, and localization as issues that may require further support or factual development. *Id.* at 5. On August 11, 2023, Petitioner was subsequently ordered to file the outstanding records and documentation requested by Respondent, and a statement of completion when complete. ECF No. 46.

Petitioner did not file the outstanding documents for consideration until November 22, 2023. ECF Nos. 53-54. One month later, in December 2023, Respondent filed a status

report and, rather than stating how he intended to proceed, he renewed his request for a vaccine administration record (or other supporting records related to the administration of the subject vaccination), and records related to Petitioner's workers' compensation claim. ECF No. 55. In response, on January 31, 2024, Petitioner filed her workers' compensation records. ECF No. 56. Due to deficiencies in Petitioner's filings, Petitioner's November 22, 2023, and January 31, 2024 records were stricken from the record on February 6, 2024. *See* ECF No. 57. Petitioner properly re-filed two medical record exhibits and her workers' compensation records[3] on February 16, 2024. ECF Nos. 58-59.

I have determined that before Respondent conducts a review of this case and reports his position, a factual ruling regarding proof of vaccination will assist in its ultimate disposition. Thus, the issue of proof of Petitioner's October 16, 2018 flu vaccination is now ripe for resolution.

## II.    Issue

At issue is whether, despite the absence of a vaccine record, Petitioner received a flu vaccine intramuscularly in her left deltoid on October 16, 2018, as alleged.

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this is not an iron-clad rule. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of*

---

[3] The workers' compensation record filed on February 16, 2024, appears to be a duplicate of the workers' compensation record previously filed on May 3, 2023. *Compare* Ex. 10, ECF No. 41-1, *with* Ex. 11, ECF No. 59-1. I will thus reference Petitioner's Exhibit 10, only.

*Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, at \*4 (Fed. Cl. Spec. Mstr. Apr. 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed. Cir. 1992). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time but that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following evidence:[4]

---

[4] For consistency and clarity, I will cite to the page of Petitioner's exhibits using the system-generated Bates stamp numbering reflected at the top of each page. I will also cite to the ECF number of the exhibit.

- On the morning of October 26, 2018 (ten days after the alleged vaccination), Petitioner contacted her employer, Healthcare Services Group (the facility that organized the administration of the alleged vaccination), reporting left shoulder symptoms "since her flu shot over a week ago." Ex. 10 at 38, ECF No. 41-1.

- Petitioner underwent an evaluation that same day. Ex. 3 at 9, ECF No. 24-3. The record from this visit does not include a date of injury but states "about 1+ weeks ago, she received a flu vaccine in the left shoulder." *Id.* The physician noted that Petitioner's left deltoid injury "is secondary to [a] flu shot she received at work." *Id.* at 11-12.

- Later on that day, Petitioner filed an incident report (workers' compensation report) with Healthcare Services Group. Ex. 10 at 37, ECF No. 41-1. Petitioner represented that the date of the incident was on "10/16/2018" when "[s]he got a flu shot. The nurse put it in her shoulder rather than further down on the arm." *Id.* at 37, 40. Petitioner described pain and limited movement to her left shoulder. *Id.* at 37.

- Also on October 26, 2018, a copy of Petitioner's incident report was prepared and forwarded to another facility. Ex. 10 at 39, ECF No. 41-1. The document confirms transmittal and states that Petitioner's incident report (initiated on October 26, 2018), was prepared "10 day(s) after the reported date of injury." *Id.*

- Petitioner presented for a follow-up visit and initial physical therapy ("PT") evaluation on October 30, 2018. Ex. 3 at 18, ECF No. 24-3. The chief complaint is listed as "left shoulder and arm pain after receiving [a] flu shot." *Id.* More so, the history of present illness states that Petitioner presented "for a recheck for an injury that occurred on 10/16/2018." *Id.* at 18, 25. The "mechanism of injury" states that Petitioner "received a flu shot in the upper left arm into the shoulder joint." *Id.* at 21.

- Petitioner underwent an orthopedic evaluation on November 13, 2018. Ex. 4 at 72, ECF No. 24-4. Petitioner's physician noted that Petitioner "injured [her] left shoulder at work on 10/16/18 after a flu shot."[5] *Id.*

---

[5] Visit notes from Petitioner's November 21, 2018 orthopedic follow up and thereafter reiterate Petitioner's previously-provided history that she "started having pain in the shoulder on 10/16/18 after receiving a flu

- During an examination in pursuit of Petitioner's workers' compensation claim on November 21, 2018, the date of injury is listed as "10/16/18" and the affected area is listed as the left shoulder. Ex. 10 at 42, ECF No. 41-1.

- In a Disability Insurance Claim Form authored on January 10, 2019, Petitioner's physician listed the date of her injury as "10/16/18" and noted that she "started having left shoulder pain after receiving a flu shot in the arm." Ex. 10 at 51, ECF No. 41-1.

- Petitioner began a second round of PT on March 6, 2019. Ex. 5 at 3, ECF No. 24-5. The date of onset is listed as "10/16/2018." *Id.* However, the history section states that Petitioner's shoulder pain is "related to getting her flu shot at work on 10/26/18 [sic]." *Id.* at 4.

- On November 3, 2020, Petitioner presented for a second orthopedic evaluation and reported "a left shoulder injury after she received a flu shot on 10/16/2018." Ex. 13 at 19, ECF No. 58-2.

- In her affidavit, authored on January 12, 2022, Petitioner alleges that she received the subject flu vaccine on October 16, 2018, and that she could not lift her left arm "while driving home from work." Aff. ¶ 1, ECF No. 8.

- Petitioner's counsel submitted an affidavit on Petitioner's behalf regarding the unsuccessful efforts in obtaining Petitioner's vaccination record from her employer. Ex. 1, ECF No. 24-1. Counsel explained that Petitioner was employed by Healthcare Services Group, who was "contracted to provide in house services to ManorCare (nursing facility)." *Id.* ¶ 2. Thus, counsel requested Petitioner's vaccination record from both facilities. *Id.* ¶ 3. Counsel attested that, in the spring of 2021, he received correspondence from each facility stating that they do not have Petitioner's vaccination records. *Id.* ¶¶ 4-5. Subsequently, counsel attempted to follow up with a supervisor at Healthcare Services Group, but his efforts were unavailing. *Id.* ¶¶ 6-8.

---

shot." *See,* e.g., Ex. 4 at 33, 69, ECF No. 24-4; Ex. 12 at 13, 17. It appears this history was copied from Petitioner's initial orthopedic visit.

- Petitioner filed an email from a representative of Healthcare Services Group, dated December 7, 2022, Ex. 9, ECF No. 38-1. The email states that the "District Manager for the facility where [Petitioner] previously worked . . . was unable to find anything in her personnel or medical file regarding the flu vaccine that you stated she received on October 16, 2018." *Id.*

To prevail under the Vaccine Act, a petitioner has one foundational evidentiary obligation in any claim: that he "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

There are many Program cases in which direct proof of vaccine administration is missing. But when presented with sufficient preponderant *circumstantial* evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony – special masters have found vaccinations to have occurred despite the absence of direct proof. *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). Of course, not every case succeeds where such direct proof is lacking; evidence has been found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and/or the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd,* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

In this case, the medical records are fairly consistent as to the date of Petitioner's vaccine administration – a fact that is helpful given the absence of a vaccine administration record. Indeed, the records close in time to the alleged vaccination and repeatedly thereafter record the date of vaccine administration on October 16, 2018. *See,* e.g., Ex. 3 at 18, 21, 25 (an October 30, 2018 PT record showing "left shoulder and arm pain after receiving [a] flu shot" on 10/16/2018); Ex. 4 at 72 (a November 13, 2018 orthopedic note stating Petitioner "injured [her] left shoulder at work on 10/16/18 after a flu shot"); Ex. 13 at 19 (a November 3, 2020 orthopedic record reflecting "a left shoulder injury after [] a flu shot on 10/16/2018"). In each instance, Petitioner reported the onset of her pain following her receipt of a flu vaccine (and in most cases at work) – a factor that supports Petitioner's allegations.

Additionally, all of Petitioner workers' compensation forms and corresponding incident reports – created close in time to the alleged vaccination – state that the date of Petitioner's injury occurred on October 16, 2018, following her receipt of a flu vaccination. *See,* e.g., Ex. 10 at 37, 40 (an October 26, 2018 incident report noting the date of the incident as "10/16/2018" when "[s]he got a flu shot" in the left shoulder); Ex. 10 at 51 (a January 10, 2019 Disability Insurance Claim Form listing the date of injury as "10/16/18" that "started . . . after receiving a flu shot in the arm").

And, despite the lack of a vaccine record, Petitioner's employer – from whom she received the vaccine – did not contest her workers' compensation claim, further supporting the truth of her assertion that she received the subject flu vaccination on October 16, 2018. Ex. 10 at 40 (workers' compensation claim form documenting onset on 10/16/2018, and as a result of her flu shot). More so, Petitioner's medical records show she was referred to treatment (including physical therapy) by her employer due to her workers' compensation claim. *See,* e.g., Ex. 3 at 10. This fact supports Petitioner's allegations.

It is also unlikely that Petitioner's employer, Healthcare Services Group, would have entertained her workers' compensation claim, sending her for treatment, without some reasonable belief that Petitioner did in fact receive an influenza vaccination in her left deltoid on the date in question. Her employer's actions, as well as the consistent reports of onset following a flu vaccination on October 16, 2018, found in contemporaneous medical records close in time to vaccination and for the purposes of obtaining medical care, support her allegations regarding the date of vaccination.

Given all of the foregoing, I find that despite the lack of a specific vaccine record, Petitioner has provided preponderant evidence establishing that she received a flu vaccine intramuscularly in her left deltoid on October 16, 2018, as alleged.

## V.    Scheduling Order

In light of my findings regarding proof of vaccination, Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent at any time. Respondent should consider his tentative position in this case.

**Respondent shall file a status report indicating how he intends to proceed following my Ruling by no later than <u>Thursday, March 21, 2024</u>.**

**IT IS SO ORDERED.**

8

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master